UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LISA C. STORK, | CASE NO. 3:16CV749 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Lisa C. Stork ("Plaintiff"), requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, filed on July 12, 2016, Plaintiff asserts that the administrative law judge ("ALJ") failed to properly evaluate the opinions of her treating physicians, Drs. Barnett and Kirsner, and he erred in analyzing her credibility. ECF Dkt. #12. On September 26, 2016, Defendant filed a brief on the merits. ECF Dkt. #15. Plaintiff did not file a reply brief.

For the following reasons, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case for re-evaluation of the opinions of Drs. Barnett and Kirsner with sufficient explanation of the weighing and treatment of those opinions.

## I.    FACTUAL AND PROCEDURAL HISTORY

On December 10, 2012, Plaintiff filed an application for DIB alleging disability beginning April 3, 2011 due to degenerative disc disease ("DDD"), osteoarthritis and fibromyalgia. ECF Dkt. #10 at 67, 83, 158-159, 162, 176.[2] Plaintiff's application was denied initially and upon

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the

reconsideration. *Id.* at 85-88, 90-91. Following the denial of her application, Plaintiff requested an administrative hearing, and on August 28, 2014, an ALJ conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 32, 98. On September 30, 2014, the ALJ issued a decision denying Plaintiff's application for DIB. *Id*. at 11-26. Plaintiff requested a review of the hearing decision, and on January 28, 2016, the Appeals Council denied review. *Id.* at 1-6.

On March 28, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on July 12, 2016. ECF Dkt. #12. On September 26, 2016, Defendant filed a response brief. ECK Dkt. #15. Plaintiff did not file a reply brief. On October 18, 2016, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #17.

## II. **ALJ'S DECISION**

In his decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. ECF Dkt. #10 at 13. He further found that Plaintiff had not engaged in substantial gainful activity since April 3, 2011, her alleged onset date. *Id*.

The ALJ found that Plaintiff had the severe impairments of obesity, status-post bypass surgery, degenerative joint disease of the bilateral knees, DDD with chronic back pain, diabetes mellitus, osteoarthritis, fibromyalgia, and restless leg syndrome. ECF Dkt. #10 at 13. He further found that these impairments, individually or in combination, did not meet or equal any of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 17-18. The ALJ thereafter determined that Plaintiff had the RFC to perform sedentary work with the following limitations: she must be allowed to sit or stand alternatively, at will, provided that she is not off task more than 10% of the work period; she cannot climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, and crouch; she cannot crawl; she can only occasionally use her bilateral lower extremities for operating foot controls; and she must avoid all exposure to hazards such as moving machinery and unprotected heights. *Id*. at 18.

transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

In his decision, the ALJ considered the opinions of Drs. Barnett and Kirsner, Plaintiff's treating physicians, but he gave these opinions only "little" or "some" weight. ECF Dkt. #10 at 19-21. He attributed "little" weight to the opinion of Dr. Barnett, Plaintiff's treating physician, who opined that Plaintiff was incapable of even sedentary work. *Id*. The ALJ reasoned that Dr. Barnett's treatment notes showed that the medications that Plaintiff had been prescribed were successful and Plaintiff's daily living activities showed that she was more capable than Dr. Barnett opined. *Id.* at 20. The ALJ also noted that Dr. Barnett's clinical findings were relatively benign. *Id.* As to Dr. Kirsner, Plaintiff's treating rheumatologist, the ALJ attributed "little" weight to his opinion that Plaintiff would never return to work, finding that the opinion was inconsistent with Plaintiff's daily living activities and her successful bariatric surgery, which the ALJ found "should improve her overall functionality." *Id*. at 21. The ALJ also intimated that the doctor expressed such an opinion because he sympathized with Plaintiff or because Plaintiff demanded such an opinion as Dr. Kirsner's opinion "departs substantially from the rest of the evidence of record." *Id*.

The ALJ also discounted Plaintiff's credibility, finding that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible because the medical record did not support her limitations, medications improved her symptoms, her bariatric surgery reduced her weight and symptoms, and Plaintiff's daily living activities contradicted her extreme limitations as she cared for her own personal needs, cared for a pet cat, prepared meals, performed housework, drove a car, went out alone, shopped, paid bills, handled bank accounts, sang, listened to music, read, watched television, and played trivia. ECF Dkt. #10 at 23-24. The ALJ also mentioned that Plaintiff had a "generally unpersuasive appearance and demeanor while testifying at the hearing," which was a factor that weighed in his credibility determination. *Id*. at 24.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the

record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.    LAW AND ANALYSIS

### A.    Treating Physician Rule[3]

Plaintiff asserts that the ALJ violated the treating physician rule because substantial evidence does not support the reasons that he gave for affording less than controlling weight to the opinions of Drs. Barnett and Kirsner. ECF Dkt. #12-21. Plaintiff additionally contends that the ALJ failed to properly analyze the opinions as required by the treating physician rule and he failed to discuss the regulatory factors for determining the weight to give to those opinions. *Id*. The undersigned agrees that the ALJ's reasons for affording less than controlling weight to the opinions of Drs. Barnett and Kirsner are not supported by substantial evidence.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

-5-

supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

### **B.** **Treating Physicians' Opinions**

On December 6, 2011, Dr. Kirsner, Plaintiff's treating rheumatologist, completed an attending physician's statement for disability insurance indicating that Plaintiff had diagnoses of osteoarthritis, DDD, and fibromyalgia. ECF Dkt. #10 at 770. He indicated that he first treated Plaintiff on April 21, 2011, Plaintiff's symptoms first appeared in early 2011, and he treated her every 4-8 weeks. *Id.* Dr. Kirsner described Plaintiff's treatment and opined that Plaintiff would never be released to return to work. *Id*. at 771.

On April 15, 2013, Dr. Barnett, Plaintiff's treating physician since 1985, completed a form indicating that he last saw Plaintiff on April 5, 2013 and saw her every three months and on an as-needed basis. ECF Dkt. #10 at 765. He diagnosed Plaintiff with severe fibromyalgia and listed his clinical findings for the diagnosis as severe muscle pain and 18 out of 18 positive trigger points for fibromyalgia. *Id*. Dr. Barnett opined that Plaintiff was incapable of even sedentary work due to her severe fibromyalgia as she could not perform any lifting, bending or twisting, and she could not sit, stand or walk for more than 30 minutes. *Id.* at 766.

On April 22, 2013, Dr. Kirsner completed a form indicating that he last examined Plaintiff on March 18, 2013. ECF Dkt. #10 at 768-769. He diagnosed her with osteoarthritis, DDD, and fibromyalgia. *Id*. at 768. He identified the clinical findings supporting his diagnoses as pain, stiffness and tenderness over her sacroiliac joints and over the lumbar facet joints bilaterally, and crepitation and tenderness over the knees. *Id*. He opined that Plaintiff was unable to perform sedentary work for an 8-hour day, but she could perform sedentary work intermittently for 20 minutes at a time for perhaps 3-4 times per day. *Id.* at 769. He opined that Plaintiff was unemployable. *Id*.

On April 25, 2014, Dr. Barnett completed a form indicating that he saw Plaintiff on a monthly basis and last saw her on February 21, 2014. ECF Dkt. #10 at 763. He identified her diagnosis as fibromyalgia and described the clinical findings for the diagnosis as muscle tightness, pain and spasm. *Id*. He opined that Plaintiff could not: lift greater than 5 pounds; stand more than 30 minutes; sit more than 30 minutes at a time; walk greater than 30 minutes; bend, twist, stoop, knee, crawl or climb; and she could not reach to the side or reach overhead. *Id*. at 764.

On August 11, 2014, Dr. Kirsner wrote a report indicating that he had been treating Plaintiff for osteoarthritis, DDD and fibromyalgia since April 21, 2011. ECF Dkt. #10 at 773. He indicated that Plaintiff continued to suffer from considerable pain, stiffness and spasm, most severe in the thoracic and lumbar spine and the sacroiliac area. *Id.* He noted marked triggers over the thoracic facet joints from Plaintiff's bra line down, over her sacroiliac joints, and over the lumbar facet joints. *Id.* Dr. Kirsner explained that Plaintiff underwent steroid injections which provided short-term relief, and she underwent bariatric surgery, which resulted in significant weight loss. *Id*. Dr.

Kirsner indicated that despite this weight loss, Plaintiff continued to struggle with "severe generalized pain...and increased pain, crepitation and tenderness in both knees, greater on the left than right." *Id*. Dr. Kirsner opined that Plaintiff's functional limitations remained significant enough to keep her from working. *Id*. He found that Plaintiff could not tolerate sitting, standing or walking for more than short periods of 20 minutes at a time, she had to alternate positions frequently, and she had to walk around for several minutes when changing positions to relieve pain and stiffness. *Id*. Dr. Kirsner further reported that Plaintiff's pain, daytime fatigue, and poor sleep resulted in her lack of endurance for activity and in having an inability to persist at tasks for prolonged periods. *Id*. Dr. Kirsner opined that based upon his longitudinal experience with Plaintiff, which included his clinical observations and findings, as well as Plaintiff's "credible presentation," Plaintiff was unable to work and had been since April 2011. *Id*.

### C. Court Ruling on the ALJ's Treatment of Treating Physicians' Opinions

The ALJ addressed the opinions of Drs. Barnett and Kirsner. ECF Dkt. #10 at 19-22. He afforded "little" weight to the opinion of Dr. Barnett, relying upon the same reasons that he relied upon in attributing "little" weight to the opinions of Dr. Kirsner, Plaintiff's treating rheumatologist: Plaintiff's daily living activities, her successful bariatric surgery, and her improvement on medication. *Id*. at 20-21. The ALJ also referenced "relatively benign" clinical findings and reasoned that the opinions departed from the rest of the evidence of record. *Id*.

The Court finds that the ALJ has not sufficiently evaluated and addressed the opinions of Drs. Barnett and Kirsner in determining that their opinions were entitled to less than controlling weight and in fact only "little" or "some" weight. The ALJ recited Plaintiff's testimony that her daily living activities included napping during the day, cooking simple things, picking up after herself, playing trivia, singing, and reading. ECF Dkt. #10 at 19. The ALJ referenced Exhibit 4E in the record and indicated that the daily living activities cited in this Exhibit were inconsistent with the treating physicians' opinions. *Id*. at 21.

Exhibit 4E in the record is the Social Security Administration ("SSA") Adult Function Report that was completed by Plaintiff on January 25, 2013. ECF Dkt. #10 at 191-198. The Report asked Plaintiff to describe her activities from the time that she woke up until the time that she went

to bed. *Id*. at 192. Plaintiff wrote that she gets dressed, eats leftovers or something easy to put together, she sits and checks social networking, and she watches television. *Id*. She reported that she gets out when able to go to the store and goes out to eat when her family can take her. *Id*. Plaintiff further wrote that she cares for her cat by feeding him and giving him water, but she cannot change his litter and someone had to help her do that. *Id*. Plaintiff reported that she can dress herself with pain and difficulty, she can feed herself simple things to eat, and she can use the toilet. *Id*. She indicated that she can clean the house on occasion and in small bursts only. *Id*. at 193. She explained that it could take her all day to clear off a cluttered table so she does not clean very often. *Id.* She wrote that she cannot do yard work because of the pain and lack of stamina, and she goes outside two to three times per week. *Id*. at 194. She reported that she can shop only if it is not done for her and she shops in the store as needed and she shops by computer. *Id.* She can pay her bills, count change and handle a checking and savings account. *Id.* Finally, Plaintiff reported that her hobbies included singing, listening to music, watching television, and playing trivia. *Id*. at 195. She explained that she does these things often, but she becomes short of breath when singing and playing trivia sometimes requires her to go out. *Id*.

  The Court finds that none of the activities reported by Plaintiff negate, contradict, or are inconsistent with the opinions of Drs. Barnett and Kirsner. "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3rd Cir. 1981). Sporadic or transitory activity does not disprove disability. *Id*. The Court finds that these relatively minimal activities reported by Plaintiff do not constitute substantial evidence to support the ALJ's decision to afford less than controlling weight and in fact only little weight to the opinions of Drs. Barnett and Kirsner.

  The ALJ also relied upon the fact that Plaintiff felt better and improved after she underwent bariatric surgery. ECF Dkt. #10 at 20-21. He surmised that, "since the claimant's successful bariatric surgery, which is detailed below, her weight has significantly decreased, which should improve her overall functionality." *Id*. at 21. The ALJ correctly considered Plaintiff's bariatric surgery. However, Dr. Kirsner specifically mentioned Plaintiff's bariatric surgery in his report and nevertheless opined that she was still severely restricted. *Id*. at 777. He discussed the surgery and

stated that Plaintiff had significant weight loss and some increased mobility as a result. *Id.* However, he went on to state that "[d]espite weight loss she continues to struggle with severe generalized pain," and he concluded that "[u]nfortunately, her functional limitations have remained significant enough to prevent her from attempting any type of regular or continuous work." *Id.* He outlined her limitations and opined that Plaintiff was unable to work and had been since April 2011 based upon his longitudinal experience with Plaintiff, which included his clinical observations and findings, as well as Plaintiff's "credible presentation." *Id.* Since Dr. Kirsner specifically considered Plaintiff's bariatric surgery and nevertheless opined that Plaintiff was still disabled, the Court finds that substantial evidence does not support the ALJ's reliance upon Plaintiff's successful bariatric surgery as a reason to afford less than controlling weight to the opinions.

The ALJ also considered Plaintiff's improvement with medication as a reason for affording less than controlling weight to the opinions of Dr. Barnett. ECF Dkt. #10 at 20. The ALJ noted that Plaintiff received general care from Dr. Barnett for her fibromyalgia, myalgia, diabetes, DDD, rotator cuff tendinitis, and hypothyroidism. *Id.* He noted her medications for these conditions and said that they were a "great success." *Id.* He also noted that Plaintiff had not required the ongoing use of narcotic medications. *Id.*

Again, the ALJ properly considered the positive impact that Plaintiff's use of medications had on her symptoms and conditions, and he properly considered that Plaintiff did not require the use of ongoing narcotic medications. However, Dr. Kirsner reported on numerous occasions that despite her fibromyalgia medications and injections, Plaintiff continued to have severe and marked fibromyalgia triggers and he opined that "[s]he certainly cannot work in this condition." ECF Dkt. #10 at 665-667. He also noted that while the injections provided relief, the injections were not a long-term solution based upon Plaintiff's age. *Id.* at 667.

The ALJ also referenced "relatively benign" clinical findings and reasoned that the opinions of Drs. Barnett and Kirsner substantially departed from the evidence of record. ECF Dkt. #10 at 20. As Plaintiff points out, the record contains numerous abnormal findings, including marked trigger points over the joints, tenderness to palpation, restricted movement, marked pain, and crepitation. ECF Dkt. #12 at 16-20, citing ECF Dkt. #10 at 295, 306, 310-316, 360, 366-368, 370, 476, 663, 774-

778, 781-782, 826. Further, unlike other medical conditions, fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity. *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988); *see also Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243-244 (6th Cir. 2007)("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant"). Those who suffer from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244 (quoting *Preston*, 854 F.2d at 820). In the absence of other objective manifestations, diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Preston*, 854 F.2d at 820. Plaintiff's treating physician noted the trigger points and ruled out other conditions before making a fibromyalgia diagnosis. The Court finds that the ALJ's reliance upon "benign" findings in order to discount the treating physicians' opinions is not supported by substantial evidence.

The Court also notes that the ALJ suggested the possibility that Dr. Kirsner was biased in making his report based upon his sympathy for Plaintiff or based upon Plaintiff's insistence or demand that he provide such a report. ECF Dkt. #10 at 21. However, the ALJ provides no basis for such a statement. Without any support, this statement is not a valid reason for discounting Dr. Kirsner's report and opinion.

The Court notes that the Sixth Circuit recognizes that a violation of the good reasons requirement could constitute harmless error in three circumstances: (1) where the treating source's opinion was patently deficient; (2) where the Commissioner made findings consistent with the treating source's opinion; or (3) where the Commissioner otherwise met the goal of 20 C.F.R. § 416.927(c)(2). Cole, 661 F.3d at 940. Here, the opinions of Drs. Barnett and Kirsner were not patently deficient on their faces, the ALJ did not make findings consistent with those opinions, and the goal of the regulation was not otherwise met because the ALJ's decision does not permit meaningful judicial review. Accordingly, the Court finds that the ALJ's treatment of the opinions of Drs. Barnett and Kirsner did not constitute harmless error.

For the above reasons, the Court finds that the ALJ has violated the treating physician rule and reversal and remand is therefore required for a more thorough and supported analysis of those opinions.

### D. Credibility

Plaintiff additionally argues that the ALJ did not properly evaluate her credibility. ECF Dkt. #12 at 22-24. In light of the Court's remand of this case based upon the ALJ's failure to comply with the treating physician rule, the Court declines to address this remaining allegation as the ALJ's re-evaluation and analysis on remand may impact his findings on this issue in the remaining steps of the sequential evaluation. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 417 (6th Cir. 2011). The Court does note that the ALJ indicated that one factor he considered in his decision was his observation of Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." ECF Dkt. #10 at 24. However, the ALJ fails to provide any basis for such an observation and the record of the hearing fails to support such a finding. Without any support, the Court cautions the ALJ about relying upon such an observation.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case for reevaluation of the opinions of Drs. Barnett and Kirsner and further analysis and explanation of the ALJ's treatment of said opinions.

Date: September 18, 2017      */s/George J. Limbert*
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE